Thank you. Take your time. Our second case is United States v. Edwin Deshazior. Case number 16-11737. Is it Carmon or Carmen? Carmen, Your Honor. Okay. Ms. Carmen, whenever you're ready. Thank you. Good morning. May it please the Court, Katie Carmon, Assistant Federal Defender, on behalf of Edwin Deshazior. Your Honors, there are multiple issues in this case, but quite frankly, the case rises and falls on whether or not this Court finds that Florida sexual battery, particularly Florida sexual battery statute 794.011 subsection 3, whether that qualifies as a violent felony pursuant to the Armed Career Criminal Act. Can I ask you a procedural question first before you dive into your argument? He has a number of prior convictions. Yes, Your Honor. My question to you, and I'll ask Mr. Colan the same thing when he gets up, is which ones of those did the district court rely on in imposing an ACCA enhanced sentence, and which ones did the district court either reject or not address at all because it believed it didn't have to? As worn out by the sentencing transcript here, there were no specific findings as to which prior convictions that Judge Middlebrooks relied on. What we did was we argued all of them, and in fact, the district court here said that he believed some of them, and he did not specify which, but some of them were precluded by precedent, and that he found that they were violent, but did not make specific findings as to, I find that sexual battery is violent, I find that kidnapping is violent, did not make any specific findings there. That's why you addressed, and that's why we have to go through every single one of them. I think this case rises and falls on the sexual battery count, and I'll tell your honors why I believe that. Two of Mr. DeShazer's prior convictions are resisting with violence and aggravated assault, which I believe this court, with its prior precedent, has already ruled upon. In its briefing, the government did not address the defendant's argument regarding kidnapping, although they have a statement in their brief that they don't concede it. They ask the court or acknowledge to the court that the court didn't have to make a decision as to that. I believe, if your honors find that the government has waived that argument, that what is left is sexual battery. To be specific, there are two charging documents for sexual battery. There's a substantive charge and an attempted charge. That is correct. One occurred in 1989. That is the two counts of substantive sexual battery. In 1992, the charging document reads, attempted sexual battery and kidnapping. Now, it was argued to the district court that the 1989 charging document could not be considered because of an issue with the judgment that was presented by the government. What happened was the judgment of conviction was not the original judgment of conviction that would have outlined the offense and statutes of conviction. What the government presented as a Shepard document was a judgment from a subsequent probation violation. Why should that not count as a Shepard approved document from a probation violation from a subsequent hearing of the court? To answer your question, your honor, the 11th Circuit has two cases which I've relied upon to say this shouldn't be relied upon, to repeat myself. Day and Spell. And what Day and Spell note and hold is that the charge of conviction, to rely on a charging document to decide what the charge of conviction was, there has to be certainty that the charge charged is the same charge of conviction. And I'll take your honor to the government's appendix. It's page 28 of 61. That is the 1989 judgment where you don't see what substantive charge he was convicted of, the statute number, and then what level felony. Where you do see that is the 1992 judgment, which is page 40 of 61 in the government's appendix. And so there is no confidence in the 1989 judgment that what he was charged with is the offense of conviction. Is the 1992 document that you object to related to the attempted sexual battery charges or independent of it? I'm objecting to the 1989 judgment. No, I know, but because you say the 1992 document is not a proper, my question is, is that 1992 document that you say is insufficient, is that related in any way to the attempted sexual battery charges from that year? Sorry. I think I've actually gotten the court confused, so let me clarify. The 1992 judgment is for the attempted sexual battery and the Florida kidnapping. That is a proper judgment which actually shows, for comparison purposes, the charge name he was convicted of, the statute under which he was convicted, and then the ultimate sentence. For comparison purposes, the 1989 judgment, which were the two Florida sexual batteries, the substantive counts, that judgment is from a prior or a subsequent probation violation that does not list, as the 1992 does, what charges he was convicted of and under what statute he was convicted of. When was that document from? That document was from- Also 1992? Because when he got convicted of the attempted sexual battery, that constituted a probation violation for the 1989 substantive charge? That's correct, your honor. Okay, got it. Yes. It's our position that this court cannot rely on the 1989 judgment to figure out exactly what were the counts of conviction pursuant to its precedent and day and spell. What we are left with is the 1992 judgment for attempted sexual battery and Florida kidnapping. I don't want you to forego this argument because you may run onto something else and then not get to it. So let's assume, for purpose of discussion, that that document that the government introduced was sufficient. On the merits, do you think that there is an argument that sexual battery is not a violent felony, a violent offense under the ACCA? I do, your honor. And I'll reach that now. Let's hear that. The four elements that the state has to prove to prove Florida sexual battery and I'll note for the court that in 1989, if the court is going to assume that the charging document is sufficient, in 1992, it is the same subsection. So when I'm discussing sexual battery and these elements, they do apply to the merits of both. And so those elements are one, the age of the victim, two, union or penetration, three, the use or threatened use of a deadly weapon, and four, lack of consent. And so what I want to concentrate the court on here is element number three, which is the use or threatened use of a deadly weapon. And just briefly, your honors, the age of the victim obviously does not contain an element of violent physical force. Lack of consent does not either. Consent can be given or said no verbally. No physical resistance is required. And so the element here that needs discussion about whether or not it contains violent physical force is the use or threatened use of a deadly weapon. And I want to point the court to some Florida precedent in deciding the least of the acts criminalized here and looking to have Florida court to define and discuss these elements. The first case I want to draw the court's attention to is Shelby v. State. That's a second district court of appeal case. And what Shelby held is that the mere representation that a defendant has a deadly weapon is sufficient for conviction under this subsection. And so the facts in Shelby were that the defendant told the victim, I have a gun. The victim never saw the gun. The victim didn't feel the gun. The victim was never threatened with the brandishing of the gun.  In fact, the court uses the term threat a number of times in Shelby. Why doesn't that make a difference? It does, Your Honor. In Shelby, you are correct that the court held that that was sufficient and that was a threat. And so what I want to move on next in using Shelby is that one, now we know the mere representation that I have a deadly weapon is sufficient. So I now think what the court has to consider is what the deadly weapon is. And does that deadly weapon and its implementation necessarily require violent physical force? And so because of Shelby, we know that the representation that I have, X, is sufficient as a threat. And so I think what the court then has to analyze is what is X? And so there are two Florida cases that I'll point Your Honors to where courts have found these items to be a deadly weapon. And it's our position that the implementation of these items does not include violent physical force. And I am mindful of the court's admonition against excessive legal imagination and implausibility. And so in these two cases, I'm demonstrating to the court that these have been found to be deadly weapons in Florida state courts. The first is Smith v. State, and that is a first District Court of Appeal case from 2007. And in Smith, bleach was considered to be a deadly weapon when it was, and I'll quote, sloshed in the victim's face. And the facts of that case were that a boyfriend sloshed bleach into a girlfriend's face and the officer at the trial testified about the corrosive properties of the bleach and that she had to go get her eyes flushed out. And the jury found that that was indeed a deadly weapon. And it's our position that that implementation of that deadly weapon does not require the violent physical force mandated by Curtis Johnson. The second is Morris v. State. It's a first District Court of Appeal case from 1998. And in that case, the court quoted, in Florida, the definition of deadly weapon is broad and it does not preclude finding a dog to be a deadly weapon. And in that case, a dog who, by the officer's observations, was a large mixed breed dog, attacked a police officer and bit him, I believe, on the right calf. And a jury found that the dog was a deadly weapon pursuant to an aggravated battery with a deadly weapon. Are there any Florida cases where the person was convicted under the statute subject section at issue here, where the deadly weapon was something like bleach or a dog? Not that I found, quite frankly, Your Honor. But I will note to the court that the definition of deadly weapon for aggravated battery, aggravated assault, and sexual battery is the same exact definition. And it's always a jury question. And so it's a little bit of a hindsight looking- Well, it's a jury question because a judge can't direct a verdict in favor of the state in a criminal case. Well, and there's no list. This is not a statute where there's a list of these bylaw are deadly weapons. And so- But why do you think, going back to Judge Pryor's question, that the type of deadly weapon, no matter how broad the definition, makes the violence either less likely to occur or less forceful or the like? Bleach can be really problematic. A large dog thrown at you in an attack mode can be really problematic. A sharp object in your ear can be really, really problematic. So why should that be a governing principle? It's our position, Your Honor, that deadly weapons are not created equal. And when the court has admonished us against this excessive legal imagination, and we've talked about sprinkling the poison or tapping the jogger who then falls off the cliff. What the court has recognized is that there are ways to use deadly weapons that do not require that violent physical force. However, none of that has been rooted in case law. And so the courts have said that's excessive legal imagination in those circumstances. Letting a dog out of its cage or sloshing bleach is not the same as stabbing or pulling at the trigger of a gun. And so those deadly weapons do not, the implementation of those deadly weapons, do not require the violent physical force mandated by Curtis Johnson. Talk about the weapon for a moment. You would assume that using a deadly weapon would be using deadly force and violent force. It's really pulling the trigger that you'd be complaining about. Is that a violent act? I mean, quite candidly, it seems so. And all cases that have discussed the firing of a gun have said yes, it is. But there's something inherently different, too, if I had a case to show you sprinkling poison. That doesn't require a violent physical act. Opening up the gate for the dog doesn't require a violent physical act. When we look at the result, I mean, isn't the key here the result that's achieved? By setting in motion a series of events that results in an injury or death to another person. That's certainly, that indirect causation is certainly being debated. And it's pursuant to the United States Supreme Court's decision in Castleman. The 11th Circuit has not imported that common law force into its jurisprudence yet. Some circuits have. The 5th Circuit has flat out rejected it. And what I would tell your honor is that that discussion through Castleman was circumscribed only to misdemeanor crimes of violence. And that common law definition, which does include the indirect application, only lives there. And Castleman, by its own words, does not extend the Armed Career Criminal Act. Okay. You think, one more question, do you think putting aside that element, that non-consensual sexual battery is a violent offense or a violent felony? Putting aside the deadly weapon element. Yeah. No, your honor. All that's required is that the victim is over the age of 11. Union, which simply means contact. It doesn't even require penetration. And this court has held in Owens that slight penetration is not enough for all that's required is union, which is defined as contact. And then lack of consent. But how do you overcome lack of consent? The considerations from the jury instructions are mental capacity. No, but how do you overcome lack of consent without force? Unless you have a victim who's not conscious or awake. Florida state courts have said that no physical resistance is required.  Lack of consent can come from a verbal no. So it does not require the struggle that I think would be violent physical force. That's not required by that element. All right, thank you very much. May I ask one more question? Of course. Ms. Jordan. As I recall it, you don't make a different argument with respect to attempt to commit sexual battery. Is that correct? That's correct. Thank you. All right, thank you very much. You've saved your time for rebuttal. Mr. Colon. Good morning. May it please the court, I'm Jonathan Colon on behalf of the United States. With me is Ann McNamara, who handled the case in the district court. I'm going to go right to the attempted sexual battery conviction in PSI paragraph 23. Let me ask you one thing before you do that, Mr. Colon. So you, although you are not conceding the issue, you've essentially given it away in practical terms on the kidnapping charge. Right, because you've chosen not to address it in your brief substantively. Right, without waiving the arguments, we believe we can get to- Well, no, no. You've waived it. You don't want us to hold that it's not a violent offense, but you've given up an argument to the contrary in this case. We agree with the defense counsel that the attempted sexual battery conviction would make the third act a predicate, and so the court need not reach the kidnapping. Okay, but if we disagree with you on that, you've given up kidnapping as a basis for the Ockhine-Hance sentence, right? Well, we put the elements in our brief, Your Honor, and I think if the court could look at those elements and could make its ruling- No, but you can't just put the elements out there without a substantive argument, right? I suppose, Your Honor, but I think that as defense counsel says, this case rises and falls on the attempted sexual battery conviction in paragraph 23 of the PSI, which is the one that does have clear judgment documents showing which particular subsection was the offense of conviction. And the other two, the aggravated assault and resisting an officer with violence are supported by binding precedent. So the complicated matters as to the record as to the substantive sexual battery and the kidnapping count are things that this court need not address. Okay, now let's talk about that one. Now, the key element that is undisputed that is required for the subsection three, attempted sexual battery with a deadly weapon, is the use or threatened use of a deadly weapon or actual physical force likely to cause serious personal injury. The charging document as to this count, this was attached as document 27-1, pages 19 to 21. The charging document said deadly weapon. The statute subsection says deadly weapon or actual physical force likely to cause serious personal injury. As defense counsel herself cited, under Florida law, a deadly weapon is one that is used or threatened to be used in a way likely to produce death or great bodily harm. In Vale Bailon at page 1303, this court recognized that great bodily harm under slight or trivial, something this court reaffirmed just this week in Dixon. And as this court held in Turner with regards to the elements of aggravated assault, that categorically includes the use or threat to do violence. It is the use or threat to do causing severe physical injury. What, do you know what, what Florida law requires for an attempt offense to be chargeable? Do you have to take a substantial commission, a substantial step in the commission of the offense? Or do you have to commit one or more of the elements? Is it like federal law, different than federal law? Your Honor, I actually haven't broken it down into what steps are required under Florida law, but what is clear is that it involves, the rape is attempted. The threat is, I don't think it is possible under law to attempt a threat. The object of the offense is attempted. But an attempt necessarily means that you haven't committed every element of the offense. Because if you had, you would have completed the substantive offense, right? Yes, Your Honor. I'm just saying as a conceptual. Can you attempt this without the threat? I don't think one can attempt a threat. One can attempt the object. No, can you attempt the offense without the threat? I don't believe you can, Your Honor. I grant I haven't fully explored that question. I can supplement that argument with a letter of the court if you request. But I don't think that's necessary to reach here, because I think the element that had to be found was that in the manner of attempting the rape, that there was a use or threatened use of a deadly weapon. The examples that defense has relied upon about the different ways one could use a deadly weapon, there are various deadly weapons. But all of them involve categorically threatening the use of great bodily harm. Whether that is acid or bleach into the face or an attack dog, I think what Curtis Johnson shows is that we're not talking about force in the sense of physics, we're not talking about mass times acceleration. We're talking about the infliction of serious physical harm to a person, which is what Florida law requires for a deadly weapon. And so I think it would be perfectly suitable if one attempted a rape by holding a gun to the victim's head or by holding a syringe filled with potassium chloride to their neck. Either way, you are threatening the infliction of death or serious physical injury to that person in order to accomplish the rape. As you said, Your Honor, you are overcoming the person's will. That is what the threat of the force is in a rape context. You're overcoming the person's lack of consent by threatening them with death or great bodily injury. So whether it is acid or bleach or a gun, it doesn't matter. It's a deadly weapon that is going to, the threat to do violence, which is what this court found in Turner, was sufficient to make aggravated assault an act of predicate. I did look, Your Honor, also and could not find any cases under Florida law where a person was prosecuted for sexual battery or attempted sexual battery with poison, chemical weapons, anthrax, bleach, any of those kinds of examples. I think this court has made it clear that those kinds of legal imagination really don't affect the outcome of this analysis in any event. Shelby, as the court pointed out, included the explicit threat. What the court in Shelby said was that in order to carry out the assault, the assailant informs the victim that he has such a weapon under circumstances that cause the victim to have reason to believe that the assailant has the ability to carry out his threat. And what ACCA requires is the use or threatened use or attempted use of physical force. And I think that sexual battery, both the substantive sexual battery or the attempted sexual battery, the legal arguments are the same. The reason we focused on the attempted sexual battery is because the judgment of conviction was part of the record showing that this was subsection three sexual assault with the use or threatened use of a deadly weapon or serious physical or personal injury. And the law is clear, that is a threat to do violence, as this court found in Turner. Unless the court has any further questions, I think the other two predicates that we're relying on, the aggravated assault and resisting with violence, are supported by binding precedent. I'm sorry, I will go back to one question that the court had raised as to which counts the trial court had relied upon. I'll point the court to the sentencing transcript at page five, where the district court rejected the objections to the aggravated assault and resisting an officer with violence. So those two were clearly relied upon by the district court. The other is a little bit more unclear. Well, again, I'll point the court to the transcript at page nine of the sentencing transcript, where the court said that the, I think, addressed the sexual battery and attempted sexual battery. The court, I don't think, distinguished between the two in ruling on that, and that's at page nine of the sentencing transcript. And then just to be clear, that the government was relying on the attempted one as well as the substantive ones. The substantive ones, because there was dispute in the trial court  as to the substantive sexual battery charges. That was a great topic of discussion at the sentencing hearing. But the government made clear at page 14 of the sentencing transcript that we were relying just as strongly on the attempted sexual battery for which the documentation is clear and in the record as to the offense of conviction. So there clearly are three predicate ACCA felonies, aggravated assault, resisting the officer with violence, and the attempted sexual battery. Ms. Karman argues in part that you can overcome lack of consent without force. Could you address that contention? Whether one could in the hypothetical sense that one can't be convicted under this subsection without force. I think, personally, I think that no. I think that, well, you know, because clearly other subsections do address cases, for example, of where a victim is unconscious. And that is where one is clearly acting without the victim's consent. Those are the unconscious cases. But this subsection requires, by its own terms, the use or threatened use of a deadly weapon or actual physical force. I don't think one can be convicted of this subsection without the use of violent force, the threat to do violence, either with a deadly weapon, which is the use or threatened use to do great bodily harm or cause death, or physical force likely to cause serious personal injury. So, no, I think as to this subsection, one could not overcome consent without the sufficient threat to do violence under ACCA. Would you like to address, just briefly, Ms. Karman's argument on the use of Shepard documents? Or do you wish to stand on your own? That applies to the substantive sexual battery. So, as to that one, I think we have to concede that the record is a bit unclear here. The documents that supported the substantive sexual battery appear to be the documents regarding the sentencing, the violation in the later case. And what's confusing is that the sentencing document, and this is at docket entry 27-1, page 7, I'm sorry, this is the, yeah, refers to counts three and four. And the PSI in this case actually refers to counts one and two of the substantive sexual battery. So it is pretty unclear, and it doesn't, and the sentencing document does not state what the statute particular subsection is, which is why we're relying on the attempted sexual battery for which the legal arguments are identical. If attempted sexual battery qualifies, then so does the sexual battery and vice versa. And therefore- This court doesn't need to address- That is correct, Your Honor. Yes. Unless there are any further questions, I think that there are three qualifying predicate ACCA felonies, and the ACCA sentence should be affirmed. Thank you. Thank you very much. Whenever you're ready. Thank you, Judge. Let me first address the government's contentions regarding the lack of consent and the force that may be necessary to overcome that. And I'll direct Your Honors to DeShazer's appendix, docket entry 25-1, which holds the jury instructions for sexual battery. And particularly of note here, it defines consent to mean intelligent, knowing, and voluntary. And then it goes on to discuss that evidence of the victim's mental incapacity or defect may be considered in determining whether consent was given voluntarily. And then it goes further to define mentally incapacitated. So the jury instructions that a jury would be read in every case certainly leave room for consent not being voluntary because of a mental defect or incapacity or something like that, which does not require force. Element four, the lack of consent, could be that the person is physically or mentally unable to consent. And so I think really where the court is focused is element three, which is the use or threatened use of a deadly weapon. And I just want to reiterate that because deadly weapon is defined so broadly, and it is defined the exact same, whether it's the aggravated assault statute, whether it's the aggravated battery, or sexual battery. That definition of deadly weapon is identical. It's not asking the court to do legal gymnastics or to embrace implausibilities because, in fact, there are two Florida courts that have found one, a dog, and two, bleach to be deadly weapons. And so this is not a case where I'm proposing hypotheticals that are not grounded in any sort of law. These are two examples from Florida courts where a deadly weapon has been found, and the implementation of that deadly weapon does not require the violent physical force level necessary for Curtis Johnson. I don't understand that. So let's take the dog example. If you threaten to commit sexual battery on someone who refuses consent, and the threat to overcome that person's ultimate will is an attack dog on a leash on your right hand, why is that not the threatened use of physical force? So in Shelby, we know that the representation that I have, the deadly weapon, is sufficient. So in that case, were a defendant to say to the victim, I have a large mixed breed dog. That would be sufficient under Shelby as a threat, and sufficient under Morris because a dog could be a deadly weapon. But the implementation of that force, you letting go of the leash or opening up the gate, that doesn't require violent physical force. Of course it does. You're just doing it through a different object. So when courts have discussed- Let's go to the bleach one then. If you throw acid on someone's face, you don't think that that is inherently violent in the use of physical force? The sloshing, as discussed in Smith, I don't think is the violent physical force like Curtis Johnson's. No matter what you're sloshing? The object is, it's what you've done, right? And so even when courts have sort of eschewed these, sprinkling of the poison, et cetera, they've not said that the sprinkling requires violent physical force. What they've said is, that's illegal in probability. And so it's- But why is discharging something that is inherently corrosive or damaging, not an act of physical force? No less so than the firing of a gun and putting a bullet into somebody, where you are not physically touching the person, but you're expending a projectile, which then causes untold damage. I'm trying to figure out where your dividing line is. In the case of the sloshing, and I use sloshing because that's the testimony that was used or that was, you know, borne out by the trial. The sloshing, if it were sloshing of a bucket, is not violent physical force like punching, kicking, dragging. So even though the result could be harm, what you've done to implement that does not require- The same holds true for a gun. Pulling a slight pull of a trigger on a gun, hair trigger on a gun. It's the same thing. It's less than sloshing, but the result may be the same. So shouldn't we focus on the result and not your action in implementing? Well, in this court's case, Dixon, just recently, and again in Vail Ballon, you had an injury that you could work backwards from. You had a result that then you could say violent physical force must have been necessary to achieve this result. We don't have that here. And so what we have is a very, very broad definition of a deadly weapon, as acknowledged by Florida courts. And that leaves open the possibility that there is a deadly weapon out there that could be threatened to a victim that does not require the violent physical force that Curtis Johnson mandates. And it's our position that Smith and Morris are two examples that are grounded in Florida law. They're examples of that. And so we believe, according to Smith, Morris, Shelby, that this does not have as an element the violent physical force necessary to be an ACCA predicate. And so we'd ask that your honors find it so and remand for resentencing. All right, Ms. Carmen. Thank you so much. Thank you both very much. Thank you.